UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Doe, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 CV 7642 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| School District 214, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff John Doe ("Doe") has filed an eight-count complaint against School District 214 and various defendants. Doe alleges that he is a former student at Prospect High School who was the victim of years of racially-motivated harassment, disparate treatment, and bullying on the part of his fellow students, teachers, and school staff. Moreover, he alleges that despite a Bullying Prevention Plan, school administrators turned a blind eye to plaintiff's suffering, despite having been repeatedly made aware of it by plaintiff's mother.

Defendants have moved to dismiss Count III (Intentional Infliction of Emotional Distress under Illinois law); Count IV (*Monell* Custom and Practice Claim Pursuant to 42 U.S.C. § 1983); and Count VII (Race Discrimination in Violation of 42 U.S.C. § 1983) [Dkt. 7]. In addition, defendants have moved under Rule 12(f) to strike plaintiff's use of a fictitious name. For the reasons set forth below, defendants' motion is denied.

**Count III:  Intentional Infliction of Emotional Distress**

Defendants argue that plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim is preempted by the Illinois Human Rights Act and should be dismissed. Plaintiff argues

1

that there is an independent basis for his IIED action other than the Human Rights Act, and therefore his claim is not preempted.

The Illinois Human Rights Act created the Department of Human Rights and the Human Rights Commission, tasked with the responsibility of investigating charges brought by parties claiming to have suffered civil rights violations. The Act, the Department and the Commission establish and follow comprehensive administrative procedures governing the disposition of civil rights violations, as well as depriving the courts of the state over civil rights violations except as provided in the Act. *Blount v. Stroud*, 904 N.E.2d 1, 7 (Ill. 2009). When a plaintiff brings a civil rights violation within the meaning of the Human Rights Act, a court lacks jurisdiction over the claim except pursuant to the comprehensive procedures set forth in the Human Rights Act. *Geise v. Phoenix Co. of Chi., Inc.,* 639 N.E.2d 1273, 1276-78 (Ill. 1994). Where, however, the plaintiff can establish a basis for imposing liability on defendants independent of the legal duties created by the Act, it cannot be said that plaintiff's claim is "inextricably linked" to a civil rights violation within the meaning of the Act, and the jurisdictional bar of the Act is not triggered. *Blount, supra* at 9.

Defendants argue that plaintiff has not established the elements of an IIED claim as a separate tort from his civil rights violation, specifically, that the bullying and harassment he alleges was because of his race. If there is no independent basis for the tort plaintiff alleges other than a civil rights violation within the meaning of the Human Rights Act then defendants are right and the court has no jurisdiction.

While the parties' briefing in this case is, to say the least, brief and superficial, the court finds no citation in defendants' briefs to any part of the Human Rights Act that covers the conduct of which plaintiff complains. Defendants' Memorandum in Support of their Motion to

Dismiss [ECF No. 8] fails to cite *any* section of the Human Rights Act. In their Reply Brief [ECF No. 17], defendants refer only to sections of the Human Rights Act that deal with race discrimination in employment, real estate transactions, access to financial credit and availability of public accommodation. 775 ILCS 5/1-103(Q) & 5/2-102(A). While the Human Rights Act has a section that deals with elementary, secondary and higher education, 775 ILCS 5/5A-101, that section deals only with sexual harassment. Sexual harassment is not any part of plaintiff's claims. In short, the defense has directed the court to no section of the Human Rights Act that even deals with race-related harassment of a student in secondary school.

      Nor do defendants cite any case indicating that the Illinois Human Rights Act addresses race discrimination in the context of school bullying. While the court has not read every case included in defendants' lengthy string citation (Reply Brief at 2, ECF No. 17), the defendants in these cases appear to be businesses, supporting the court's view that the Human Rights Act addresses race discrimination in employment but not in the context of the bullying of school students. Nor has the court's research disclosed any such cases. If defendants wish to show the court that plaintiff's Count III is preempted, they will have to cite statutes and/or cases that deal with something other than civil rights in the context of employment.

      Plaintiff thus appears to be correct: "The Illinois Human Rights Act . . . does not establish a cause of action for a student for a school's failure to supervise, to discipline, or to prevent bullying, whether relating to race or otherwise. The only specific duties IHRA creates in regard to schools relate to the prevention of sexual harassment." The motion to dismiss Count III is denied.

**Count IV: *Monell* Claims**

A municipality or other local governing body can be sued under §1983 in three instances: (1) for an express policy that causes a constitutional injury; (2) for a widespread practice that, although not authorized by written law or express municipal policy, causes a constitutional injury and is so permanent and well settled as to constitute a custom and usage with the force of law; and (3) where the constitutional injury is caused by a person with final policymaking authority. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 734-45 (7th Cir. 1994) (collecting cases), *superseded by statute on other grounds as stated in Holmes v. Marion Cnty. Office of Family & Children*, 349 F.3d 914, 918–19 (7th Cir. 2003). Both parties agree that what must be shown in this case is an official custom or practice in District 214. There is no heightened pleading standard for stating a *Monell* claim. *White v. City of Chicago,* 829 F.3d 837, 843 (7th Cir. 2016).

Plaintiff seeks to establish *Monell* liability by proving "a *de facto* policy and widespread custom of not preventing or properly disciplining incidents of bullying on the basis of race, disparate disciplining and treatment on the basis of race, and insufficiently investigating bullying that occurs on the basis of race." Plaintiff alleges that School District 214, despite having a handbook with an anti-bullying policy, maintained a "*de facto* policy and widespread custom" "implemented by the Superintendent, Principals, including Defendants Dowling, Laxo, Taylor, Sanecki and Doe Teachers 1-3, assistant principals, board members, and other employees of the said Defendant," of turning a blind eye to bullying on the basis of race, disciplining students differently on the basis of race and failing to investigate racial bullying adequately. In short, plaintiff alleges that the Student Discipline Policy was consistently ignored by the defendants, causing his injury. He also alleges that his injury was repeatedly brought to defendants'

4

attention, making them aware that the Policy was not being followed and that he was being injured thereby.

Defendants argue that plaintiff "fails to plead there was a custom or practice in District 214 that is causally connected to his constitutional rights deprivation." Given that this is the pleading stage, the court disagrees. For a widespread custom or practice to give rise to liability under *Monell*, policymaking officials must have made a deliberate choice among alternatives and thereby exhibited deliberate indifference to students' constitutional rights. *See City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989) (claim of officials' failure to train); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 676 (7th Cir. 2012) (same). Deliberate indifference can be established by: "(1) failure to provide adequate training [or supervision] in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations" to policymaking officials. *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029–30 (7th Cir. 2006) (citing *Harris*, 489 U.S. 390 & n.10 and *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997)); *see also Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 981 (E.D. Wis. 2014) (applying this standard at the Rule 12(b)(6) stage); *Lewis ex rel. Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993) (applying this analysis in school setting). Plaintiff has plausibly alleged facts supporting those theories.

Plaintiff alleges that he was bullied and harassed repeatedly from December 2011 to June 2015 in the presence of defendants, and defendants did nothing to stop the bullying. (Compl. ¶ 36, ECF No. 1-1.) Defendants, it is alleged, on repeated occasions failed to address or adequately punish racism directed at plaintiff and disciplined him more harshly than they disciplined his peers. (*Id.* ¶ 39.) Plaintiff also alleges that in December 2011, teaching assistant Sanecki hit him in the head (*Id.* ¶ 42), but Sanecki was not disciplined; that in Spring 2013

plaintiff was called a "jerk" by math teacher Davis, but Davis was not disciplined; that plaintiff was called "nigger" regularly by nine students, but they were never disciplined; and plaintiff was the subject of other insults and taunts (including "nigger," "monkey," "gay," and "faggot") by fellow students who were not disciplined.  Plaintiff further alleges that he was falsely accused by another student of touching her vagina and, despite his seizure condition, was locked in a room by himself for thirty-five minutes and then suspended.  During his suspension, the accusing student admitted that she had falsely accused plaintiff.  Nevertheless, the accusing student was not disciplined and, it appears from the allegations, plaintiff's suspension was not lifted.  Plaintiff alleges numerous other incidents of harassing, threatening behavior by co-students, and he alleges that he was disciplined but the other students were not.  In short, plaintiff alleges that he was repeatedly harassed and bullied, as well as being called racist epithets, that no action was taken to enforce the bullying policy for his protection and no action was taken against the other involved students.

Plaintiff further alleges that on numerous occasions, his mother brought the harassment and the differential discipline to the attention of school administrators; Doe's mother complained to Schuler of misconduct by Sanecki (Compl. ¶ 44); Doe's mother called Schuler to complain of misconduct by Davis (*Id.* ¶ 48);  Doe's mother called Taylor to complain of the March 22, 2012 incident involving inter-student misconduct (*Id.* ¶ 56); Doe himself reported to school authorities that other students are calling  him "nigger" (*Id.* ¶ 51);  Doe's mother called "school" to report name-calling by other students (*Id.* ¶ 64); Doe's mother called "school" to report name-calling (*Id.* ¶ 69); Doe's mother called Schuler to complain of racial epithets directed at Doe (*Id.* ¶ 73); Doe's mother reports to Taylor that student who accused Doe of touching her vagina admitted on

6

Facebook that it was a lie (*Id.* ¶ 89), but Doe remained suspended and his accuser was not disciplined, but nothing was done in response.

All that plaintiff must show at this point is that there was a policy or persistent practice, rather than a random event. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). His recitation of four years of racist bullying is sufficient at this stage of the case to show a persistent practice. Moreover, plaintiff will have to show that the custom or practice of which he complains can fairly be said to represent the School District's custom or practice. *See Calhoun v. Ramsey*, 408 F.3d 375, 379-80 (7th Cir. 2005). But at this point, plaintiff's allegations that the Superintendent of the District, as well as school principals and deans, knew what was happening to plaintiff (and in some instances contributed to his injury) are sufficient to allow the case to go forward. *See Hoskin*, 994 F. Supp. 2d at 982 (holding that allegations that city's police department received repeated complaints of illegal searches and seizures stated claim subjecting city to liability under *Monell*). The motion to dismiss Count IV is denied.

**Count VII: Race Discrimination Pursuant to 42 U.S.C. § 1983**

Defendants contend that plaintiff has failed to allege purposeful discrimination. Some of the incidents plaintiff alleges (such as one teacher hitting him on the head and one calling him a "jerk"), defendants contend, show bad judgment but not racism. As far as the other students' racist taunts are concerned, defendants contend that plaintiff's allegations show merely that defendants were ineffective at preventing bullying.

Defendants cite *Majeske v. Fraternal Order of Police*, 94 F.3d 307, 311 (7th Cir. 1996) for the principle that a § 1983 claim alleging racial discrimination must allege purposeful discrimination, not merely disparate impact. Defendants, however, mistake the gravamen of plaintiff's cause of action. Plaintiff is not attempting to allege that the school administrators in

District 214 intentionally discriminated against him or that their actions caused a disparate impact. Rather, plaintiff is alleging that the administrators consistently turned a blind eye to the discrimination inflicted on plaintiff by his fellow students, and thus allowed him to be subjected to a racially hostile and discriminatory environment.

Plaintiff responds that a § 1983 equal protection claim requires *either* a showing of intentional discrimination *or* a showing of deliberate indifference. He relies on *Nabozny v. Podlesny*, 92 F.3d 446, 454 (7th Cir. 1996), a § 1983 equal protection case against school officials alleging school officials' failure to protect the plaintiff from harassment based on sexual orientation. In that case, the Seventh Circuit clearly stated that a showing of deliberate indifference was sufficient: "Nabozny must show that the defendants acted *either intentionally or with deliberate indifference*." *Id.* (emphasis added). And in *J.H. v. Sch. Town of Munster,* 160 F. Supp. 3d 1079, 1085 (N.D. Ind. 2016), a § 1983 equal protection claim involving school bullying, the court similarly stated that the plaintiff must prove that the high school "acted with a discriminatory intent or deliberate indifference." More recent Seventh Circuit cases confirm that a showing that school officials had actual knowledge of severe, pervasive and objectively offensive harassment, and that their response was "clearly unreasonable in light of the known circumstances," is sufficient. *See Doe v. Galster*, 768 F.3d 611, 614 (7th Cir. 2014) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)) (requiring showing of "deliberate indifference" in student on student sexual harassment case); s*ee also C.S. v. Couch,* 843 F. Supp. 2d 894, 910 (N.D. Ind. 2011) (racially hostile environment claim brought under Title VI based on student on student harassment requires showing of deliberate indifference). *See generally Connick v. Thompson,* 563 U.S. 51, 61–62 (2011) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious

8

consequence of his action' . . . . The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'") (citations omitted).

The cases involving school districts' and school administrators' responsibility for student on student harassment indicate that plaintiff need only plead and prove deliberate indifference. The motion to dismiss Count VII is denied.

**Plaintiff's Anonymous Pleading**

Defendants claim that the court should strike plaintiff's fictitious name ("John Doe") and require him to litigate his case under his given name. Anonymous pleading is permissible, defendants argue, only when there are exceptional circumstances, such as a child plaintiff, a rape victim plaintiff or another particularly vulnerable plaintiff. This plaintiff, defendants argue, fits into none of these categories. Defendants correctly state the law. However, the court is convinced that the facts of this case put it into the limited category of cases where use of a pseudonym is permissible.

> The Seventh Circuit has stated:
>
> Judicial proceedings are supposed to be open . . . in order to enable the proceedings to be monitored by the public. The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity. Not that concealment of a party's name is always improper. The presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the plaintiff (normally the plaintiff is the party whose identity is concealed . . . .) exceeds the likely harm from concealment.

*Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (citations omitted); s*ee also Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016).

Plaintiff is a 20-year-old young man whose complaint alleges persistent instances of racial bullying on the part of his peers during his high school years (when he was aged

9

approximately 14-18). Among the incidents detailed by the complaint, besides racial slurs (including "nigger," "faggot," and "monkey"), are accusations of sexual misbehavior by plaintiff, ultimately abandoned by plaintiff's accuser. Moreover, plaintiff suffers from a number of disabilities—petit mal seizures, developmental disabilities and a learning disability—any or all of which may figure significantly in this litigation and any of which could embarrass and/or limit plaintiff's ability to partake of a normal social and academic life at his current age. One need only imagine what life would be like for a 20-year old whose peers learned he had been called nigger, faggot, and monkey; who had been accused (apparently wrongly) of sexually assaulting a classmate; and who is afflicted with seizures and developmental and learning disabilities, to understand why plaintiff seeks to bring this case without disclosure of his identity. Moreover, plaintiff's case will require the naming of various classmates, any of whom might feel justified in retaliating against plaintiff on account of his accusations against them.

     In the court's view, despite the fact that the use of a pseudonym impedes public access and may cause some additional inconvenience to those interested in the case, the potential harm to the plaintiff from disclosure of his identity is grave enough to justify the use of the pseudonym in this case. One with a legitimate grievance (and it is obviously too early for the court to form an opinion of the merits) should not be discouraged from litigating it by the harm to his current prospects which the disclosure of his identity would cause. Recognizing the reason why the Seventh Circuit has so frequently stressed that one should litigate in his or her proper name in most circumstances, the court concludes that plaintiff's age, the nature of his complaints, the fact that he accuses many other young people of racist behavior and the fact that he has multiple disabilities all justify the use of a pseudonym in this case. As plaintiff's Response Brief states, "the use of [plaintiff's] true identity would subject [p]laintiff to renewed scrutiny and

10

humiliation." Weighing the disadvantages of the use of a pseudonym against the potential harm to plaintiff were his identity known, the court agrees with plaintiff that use of a pseudonym is justified in this case.

The motion to strike plaintiff's fictitious name is therefore denied.

Dated:  March 24, 2017 /s/
Joan B. Gottschall
United States District Judge